UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| COURTNEY R. LOGAN, | ) |
| :--- | :--- |
| Petitioner, | ) ) |
| v. | ) NO. 3:18-cv-00256 |
| BILL HASLAM, et al. | ) ) |
| Respondents. | ) ) |

# MEMORANDUM OPINION

## I. Introduction

Courtney R. Logan is currently serving a 31-year sentence in the custody of the Tennessee Department of Correction, based on his 2010 conviction by a Davidson County jury of one count of attempted first-degree murder and a related count of employment of a firearm. On March 5, 2018, Petitioner filed his pro se petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1). Respondents thereafter filed an answer to the petition and the state court record, and Petitioner filed a reply to Respondent's answer. Petitioner has also filed a Motion to Show Cause of Extradition Documents (Doc. No. 25), a Motion for Preliminary Injunction (Doc. No. 29), and a Motion to Consolidate this action with his action challenging his Tennessee convictions under 28 U.S.C. § 2254.[1] (Doc. No. 30.) Respondents have filed responses to the Motion for Preliminary Injunction and the Motion to Consolidate. (Doc. Nos. 31, 32.)

---

[1] The Court notes that Petitioner's Section 2254 case, Logan v. State, No. 3:13-cv-00743 (M.D. Tenn.) (Trauger, J.), was dismissed shortly after Petitioner filed his motion to consolidate. (Id. at Doc. No. 76.)

This matter is ripe for the Court's review, and the Court has jurisdiction. Having reviewed Petitioner's arguments and the underlying record, the Court finds that an evidentiary hearing is not required. As explained below, Petitioner is not entitled to relief under § 2241, and his petition and related motions will therefore be denied.

## II.   Background

On June 25, 2009, Petitioner helped his cousin, Mississippi inmate Joseph L. Jackson, escape from custody when Jackson was transported from prison to a medical clinic, by using a firearm and otherwise threatening prison transport guards and clinic employees. Logan v. State, 192 So. 3d 1012, 1015–17 (Miss. Ct. App. 2015). After making their escape, Petitioner and Jackson traveled in a rental car from Greenwood, Mississippi to Nashville, Tennessee, where they were pulled over by police on the interstate. Id. at 1016. During this traffic stop, Jackson pulled a gun and shot Nashville Police Sergeant Mark Chestnut multiple times, and he and Petitioner left the scene with Petitioner driving. State v. Logan, No. M2014-01687-CCA-R3-CD, 2015 WL 5883187, at *2 (Tenn. Crim. App. Oct. 8, 2015). They were subsequently arrested in Tennessee. On September 22, 2010, Petitioner was convicted in Davidson County Circuit Court of attempted first-degree murder and employment of a firearm during a dangerous felony. (Doc. No. 17-1 at 65–66.) He was sentenced to 31 years in prison on December 1, 2010. (Id.)

After his conviction and sentencing in Tennessee, Petitioner was extradited to Mississippi to face charges there related to the escape. On November 28, 2012, he was convicted of five counts of kidnapping, one count of aiding escape, and one count of being a felon in possession of a firearm, for which he received seven consecutive life sentences without the possibility of parole. See Logan v. State, 192 So. 3d at 1017. Petitioner then began serving his sentence in the custody of the Mississippi Department of Correction. In 2015, he filed habeas corpus actions in this Court

2

and in Tennessee state court challenging the legality of his 2011 extradition from Tennessee to Mississippi. See Logan v. Haslam, et al., No. 3:15-cv-00787, Doc. No. 1 (M.D. Tenn. July 17, 2015). Because of his ongoing proceedings in state court, this Court dismissed Petitioner's habeas action without prejudice so that he could exhaust state remedies. (Id., Doc. No. 18.) Petitioner appealed that dismissal to the Sixth Circuit Court of Appeals, and during the pendency of that appeal he completed the process of exhausting his remedies in the courts of Tennessee. The Sixth Circuit therefore remanded his habeas case to this Court with instructions to dismiss the matter as moot, explaining as follows:

> According to the respondents, as soon as Logan was moved to Mississippi, he could no longer challenge his extradition in Tennessee court. They are correct. "Once the fugitive is returned to the demanding state, the right to challenge extradition becomes moot: the fugitive is no longer being detained by the asylum state, and so, the legality of his or her detention there is no longer at issue. . . . [The] fugitive no longer has a right to petition for a writ of habeas corpus challenging extradition . . . ." *Barton v. Norrod*, 106 F.3d 1289, 1298 (6th Cir. 1997). At that point, the "fugitive's rights are sufficiently protected by those limitations placed on the demanding state by the Constitution when determining his guilt or innocence." *Id.*

(Case No. 3:15-cv-00787, Doc. No. 42 at 2.) This Court dismissed the case pursuant to the Sixth Circuit's mandate. (Id., Doc. No. 44.)

Petitioner remained incarcerated in Mississippi until November 23, 2017, when he was extradited back to Tennessee to resume service of his Tennessee sentence. Both the initial extradition from Tennessee to Mississippi in 2011 and the extradition back to Tennessee in 2017 were executed pursuant to an agreement between the Governors of both states. That executive agreement provides, in pertinent part, as follows:

> **WHEREAS**, Title IV, U.S.C. Section 112, authorizes agreements between the states for cooperative effort and mutual assistance in the enforcement of their respective laws and policies.
> **NOW**, **THEREFORE**, it is mutually agreed that in consideration of the return of the fugitive to the State of Mississippi for judicial proceedings before the conclusion of his term of imprisonment in the State of **TENNESSEE** the fugitive

3

> will be returned by the State of Mississippi to the State of **TENNESSEE** at the expense of the State of Mississippi when the prosecution is terminated.
>
> **IT IS FURTHER MUTUALLY AGREED**, that, on or prior to said fugitive's release or discharge from imprisonment in the State of **TENNESSEE** said fugitive will be returned or released to the State of Mississippi, to serve any outstanding term of imprisonment imposed as a result of aforesaid prosecution against him in **Leflore County**, Mississippi.

(Doc. No. 17-17 at 19) (emphasis in original). Shortly after Petitioner's return to Tennessee, on December 14, 2017, the State of Mississippi lodged a detainer against him. (Doc. No. 25 at 20.)

On March 5, 2018, Petitioner filed this pro se petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1), challenging "the legality of [his] return to the custody of Respondents pursuant to the executive agreement" after being in custody in Mississippi for over six years, as well as the lodging of the detainer by the State of Mississippi. Respondent does not dispute that Petitioner's petition is timely, and that this is his first habeas petition challenging his extradition from Mississippi to Tennessee. (Doc. No. 19 at 1.)

## II. Issues Presented for Review

The Court construes the petition to raise the following four claims:

(1) Petitioner is unconstitutionally confined in Tennessee because (a) Respondents lacked authority to demand his return to Tennessee based on the flawed executive agreement, and (b) the Mississippi authorities were prohibited by Mississippi law from suspending his sentence and relinquishing custody to Tennessee;

(2) The detainer lodged against Petitioner by the State of Mississippi on December 14, 2017, is unlawful because Mississippi failed to present him with a copy of his indictment and illegally sentenced him as a habitual offender under state law, and his due process right to challenge the detainer has been obstructed due to restricted access to Mississippi cases and statutes while incarcerated in Tennessee;

4

(3) Prior to his return to Tennessee, Petitioner was deprived of his due process right to challenge the existence of probable cause supporting the executive warrant for his arrest as a fugitive from the State of Tennessee; and,

(4) The extradition from Mississippi was invalid under Mississippi law, as the authorities in Tennessee failed to authenticate the documents they used to establish Petitioner's status as a fugitive.

(Doc. No. 1 at 3–5.)

### III. Legal Standard

Section 2241 empowers federal courts to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3); Rice v. White, 660 F.3d 242, 249 (6th Cir. 2011). However, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented to the state courts the same claims sought to be redressed in federal court. Phillips v. Court of Commons Pleas, Hamilton Cty., Ohio, 668 F.3d 804, 810 & n.4 (6th Cir. 2012). To exhaust his state remedies, the petitioner must present "the same claim under the same theory" in state court. Kelly v. Lazaroff, 846 F.3d 819, 828 (6th Cir. 2017) (quoting Wagner v. Smith, 581 F.3d 410, 417 (6th Cir. 2009)).

The petitioner must "fairly present" each claim to all levels of state court review, up to and including the state's highest court on discretionary review, Baldwin v. Reese, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy.[2] O'Sullivan v. Boerckel, 526 U.S. 838, 847–48 (1999). This rule has been interpreted

---

[2] Tennessee Supreme Court Rule 39 eliminated the need to seek review in that court in order to "be deemed to have exhausted all available state remedies." Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003), cert. denied, 541 U.S. 956 (2004). Thus, for purposes of exhaustion, the Court of Criminal Appeals qualifies as the highest available state court in Tennessee. Id.

by the Supreme Court as one of total exhaustion. Rose v. Lundy, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the highest available state appellate court. Picard v. Connor, 404 U.S. 270 (1971); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987) (holding that exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. Gray v. Netherland, 518 U.S. 152, 162–63 (1996). The burden is on the petitioner to demonstrate compliance with the exhaustion requirement or that the state procedure would be futile. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).

The procedural default doctrine is ancillary to the exhaustion requirement. See Edwards v. Carpenter, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. Wainwright v. Sykes, 433 U.S. 72, 81–82 (1977); see also Walker v. Martin, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); Coleman v. Thompson, 501 U.S. 722 (1991) (same). If a claim has not been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but procedurally barred. Coleman, 501 U.S. at 731–32.

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

6

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. Lucas v. O'Dea, 179 F.3d 412, 418 (6th Cir. 1999) (citing Coleman, 501 U.S. at 754). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753. Examples of cause include the unavailability of the factual or legal basis for a claim or interference by officials that makes compliance "impracticable." Id. To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." Perkins v. LeCureux, 58 F.3d 214, 219 (6th Cir. 1995) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)); see also Ambrose v. Booker, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default"). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. Dretke v. Haley, 541 U.S. 386, 392 (2004) (citing Murray v. Carrier, 477 U.S. 478, 495–96 (1986)); accord Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006).

**IV.    Analysis**

Petitioner's claims largely concern his November 23, 2017 extradition from Mississippi to Tennessee. Petitioner claims that extradition violated his rights under the Extradition Clause of the United States Constitution due to Respondents' unlawful reliance on the executive agreement (claim 1(a)), his inability to contest his status as a fugitive (claim 3), and the illegality of his extradition under state law (claims 1(b) and 4). Petitioner also claims that the December 14, 2017 detainer lodged against him by the State of Mississippi violates his due process rights (claim 2).

**A.    Extradition Claims**

The Extradition Clause of Article IV, Section 2 of the Constitution "authorizes the extradition of fugitives from justice and was designed, in effect, to eliminate the boundaries between the states for the purpose of extradition[.]" Barton v. Norrod, 106 F.3d 1289, 1295 (6th Cir. 1997). The Extradition Act of 1793, the current version of which is codified at 18 U.S.C. § 3182, was enacted "to place a duty on the asylum state to deliver up a fugitive against whom a properly certified indictment or affidavit charging a crime is lodged." Id. at 1296 (citing California v. Superior Court, 482 U.S. 400, 407 (1987)). Federal law thus provides the framework for the extradition process, while state law provides the actual procedures for extradition. Id. (citing Martin v. Sams, 600 F. Supp. 71, 72 (E.D. Tenn. 1984)).

Respondents argue that Petitioner failed to properly exhaust his extradition claims by failing to pursue any claim in Mississippi court concerning the legality of his extradition to Tennessee. Petitioner concedes that he did not file any such challenge prior to his return to Tennessee. (Doc. No. 1 at 5.) Respondents assert that Petitioner can no longer challenge his extradition to Tennessee, as any such challenge filed after the extradition is accomplished is moot. (Doc. No. 19 at 6 (citing Barton, 106 F.3d at 1297–98, and Siegel v. Edwards, 566 F.2d 958, 960

8

(5th Cir. 1978)).) Therefore, Respondents argue that Petitioner has procedurally defaulted his extradition claims, and that this Court may not adjudicate them unless he demonstrates cause for the default and prejudice resulting from the extradition. As explained below, the Court finds that Petitioner's extradition claims are both barred by procedural default and, alternatively, subject to dismissal on their merits.

In Barton, a civil rights action under 42 U.S.C. § 1983, the Sixth Circuit held that "[o]nce the fugitive is returned to the demanding state, the right to challenge extradition becomes moot." Barton, 106 F.3d at 1298. This rule was previously applied in the dismissal of Petitioner's Section 2254 challenge to his extradition to Mississippi to face charges there. (Case No. 3:15-cv-00787, Doc. No. 42 at 2.) The rule also applies to extradition claims brought under Section 2241. See Perry v. Brothers, No. 11-4064 (FLW), 2012 WL 1533861, at *3 (D.N.J. Apr. 30, 2012) (citing Barton and finding Section 2241 petition moot because petitioner "has been returned to New Jersey, the demanding state"). However, Petitioner argues in the instant case that Respondents, by their "malicious acts," have waived the ability to rely on Barton as grounds for their assertion of procedural default. (Doc. No. 23 at 3–5.) Specifically, he claims that, "prior to the filing of this current habeas petition[,] he perfected his post conviction for the State of Mississippi the best he could, [but] said motion was confiscated and destroyed by state officials of Tennessee on or about May 1, 2018." (Id. at 5.)

According to a civil rights lawsuit Petitioner filed in the Western District of Tennessee on May 29, 2018, the documents lost on May 1, 2018 "relate[d] to his claims that are currently pending in federal court about his current detention in the custody of [Tennessee] being illegal, along with his unlawful extradition from the State of Mississippi." Logan v. Phillips, et al., No. 1:18-cv-01094-JDT-cgc, Doc. No. 1 at 3–4 (W.D. Tenn. May 29, 2018). However, the alleged loss

9

of Petitioner's documents on May 1, 2018—roughly five months after the extradition and detainer, and two months after the instant habeas petition was filed on March 5, 2018—could not have impacted his ability to prosecute a claim that had already been moot for months by that date. Because Petitioner's claim was already defaulted, the loss of his documents did not amount to "interference by officials that makes compliance impracticable." Coleman, 501 U.S. at 753. Accordingly, Petitioner has not established cause for the default, and his extradition claims are therefore barred from federal habeas review.

Alternatively, the Court finds no merit in Petitioner's extradition claims. Pursuant to Barton, the Court cannot grant relief on those claims because Petitioner has already been extradited to Tennessee. In any event, the constitutional and statutory requirements for interstate extradition "are not designed to protect fugitives," but "to facilitate the administration of justice between states." Barton, 106 F.3d at 1295. Accordingly,

> [n]either the Extradition Clause of the Constitution nor the federal extradition statute purports to confer any right on the fugitive. Rather, they confer rights and duties on the executive authorities of the states. The legislative history of both the Extradition Clause and statute clearly indicate that they were simply intended to formalize the summary extradition procedures practiced by the colonies. This purpose is clearly reflected in the Supreme Court cases dealing with interstate extradition. The Court has repeatedly articulated the purpose behind the Extradition Clause of the Constitution as one of comity between states[.]

Id. at 1297 (internal citation omitted).

Thus, "[j]udicial review of extradition proceedings is limited." Chamberlain v. Celeste, 729 F.2d 1071, 1073, 1077 (6th Cir. 1984). In Chamberlain, the Sixth Circuit affirmed the denial of a timely habeas challenge to extradition, finding that an inmate who had been convicted of a crime in Arizona was properly returned to that state to serve his sentence, even though he had previously been extradited from Arizona to Ohio with the full knowledge and consent of Arizona authorities, and had been approved for release on parole in Ohio based on his exemplary conduct

as a prisoner there. Id. at 1074–77. In light of this authority, it appears that Petitioner's conviction and sentence in Tennessee foreclose his objections to being extradited here, even if Respondents could be deemed to have waived the procedural default of his extradition claims. See id. (approving district court's finding that petitioner "has already been found guilty beyond a reasonable doubt by the demanding state for the crime which forms the basis of the extradition request," and is "obligated to serve the remainder of his sentence").

Finally, with regard to Petitioner's claim that his extradition was invalid under Mississippi law, the Court may not grant habeas relief on a claim rooted in "a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984) (citing 28 U.S.C. § 2241(c)(3) (authorizing habeas relief based on "violation of the Constitution or laws or treaties of the United States")); see also, e.g., Wilson v. Corcoran, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").

In sum, Petitioner's claims concerning his extradition from Mississippi to Tennessee must be dismissed.

### B.     **Unlawful Detainer Claim**

In claim 2, Petitioner asserts that the detainer lodged against him is unlawful because, contrary to Mississippi law, he was not presented with a copy of his Mississippi indictment prior to his original extradition to face charges there in 2011 and was subsequently illegally sentenced by the Mississippi court as a habitual offender. (Doc. No. 1 at 4.) He further claims that his due process rights are being obstructed by the presence of the detainer, as he has limited ability to consult Mississippi law in his effort to oppose the detainer in state court, due to his confinement in Tennessee. (Id. at 5.) In addition, Petitioner states in his reply brief that "[t]he controversy that currently is in existence is the fact that an unlawful detainer has been lodged against petitioner

11

obstructing his rehabilitation and interfering with his ability to obtain parole as his [Tennessee] sentence is at 30% and petitioner's post conviction proceedings in the State of Tennessee [are] being obstructed by the Mississippi conviction." (Doc. No. 23 at 5.)

Respondents contend that Petitioner's claim of unlawful detainer is procedurally defaulted. However, that claim appears to be merely unexhausted, as Respondents offer no grounds for finding that Petitioner is barred from pursuing this claim in state court. Notwithstanding this failure to exhaust, the Court will deny this claim on its merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

As stated above, the Court may not grant habeas relief based on an alleged error of state law or procedure. Pulley, 465 U.S. at 41. Thus, Petitioner's claim that the detainer is tainted by underlying violations of Mississippi law related to his initial extradition and sentencing in that state is not cognizable here. Moreover, Petitioner's complaint about the limited availability of Mississippi legal materials in Tennessee prison is not actually a due process claim properly raised in this habeas action, in that it does not contest whether he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Rather, this claim concerns access to the Mississippi courts and must be raised, if at all, in a separate action under 42 U.S.C. § 1983. See Logan v. Mississippi, No. 4:13CV122-GHD-DAS, 2015 WL 576573, at *4 (N.D. Miss. Feb. 11, 2015) (holding that challenge to "the availability of various legal materials" and resulting hindrance in accessing Tennessee courts is not a proper habeas claim, but may be pursued under § 1983).

Additionally, that the Mississippi detainer impacts Petitioner's eligibility for parole, rehabilitative programs, and post-conviction relief in Tennessee is an unremarkable consequence

of his multiple violent offenses and life sentences in Mississippi and does not present a proper claim for habeas relief. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (noting that the adverse effect of a warrant and detainer on a prisoner's classification and eligibility for rehabilitative programs did not implicate any "legitimate statutory or constitutional entitlement sufficient to invoke due process").

As the Supreme Court has recognized, "detainers are not restricted to holds pending trial, but may also be used for holds pending imprisonment after a conviction is obtained." Machiavelli v. Barnhart, No. 1:12-cv-00200-DBH, 2012 WL 5389933, at *3 (D. Me. Oct. 17, 2012) (citing Nelson v. George, 399 U.S. 224, 226 (1970)). In this context, where one state lodges a detainer to assure that a prisoner will not be released from another state's custody when an unexpired term of confinement awaits the prisoner in the first state, the detainer is simply a matter of comity between the two states. Moody, 429 U.S. at 80 n.2.

For these reasons, Petitioner's unlawful detainer claim is without merit.

### C. Motion for Preliminary Injunction

On July 31, 2019, Petitioner filed his "Preliminary Injunction Rule 65" motion. (Doc. No. 29.) However, as Respondents point out in their response to the motion, the harm this motion seeks to remedy is essentially the same harm addressed in his unlawful detainer claim. Petitioner states that he is facing irreparable harm stemming from the lodging of the detainer by the State of Mississippi on December 17, 2017, and that the equities favor granting relief because both Mississippi and Tennessee violated procedures contained in the Interstate Agreement on Detainers. (Id. at 3–4.) This motion raises issues of Petitioner's identity as the individual wanted in Mississippi, the validity of the executive agreement, his status as a fugitive from Mississippi, and the legality of the Mississippi detainer. (Id. at 4–5.) The motion seeks the following relief:

> [T]he fugitive warrant and executive agreement be quashed due to the violation of the anti shuttling provision and Article V(e) of the Interstate Agreement on Detainers, obstructing petitioner[']s right to motion for new trial and encroachment of petitioner[']s right to initial parole hearing. Detainer lodged is interfering with petitioner[']s right to rehabilitation and classification status.

(Id. at 5.) Additionally, Petitioner requests a hearing "to establish [his] fugitive status prior to his extradition to the state of Mississippi." (Id.)

The Court has already resolved Petitioner's unlawful detainer claim on its merits, including its impact on his eligibility for parole, rehabilitative programs, and a change in classification status. See Moody, 429 U.S. at 88 n.9 (dismissing such complaints and "reject[ing] the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right"). In addition, Petitioner's motion for a preliminary injunction seeks relief that a district court in Mississippi has already denied in adjudicating his habeas petition under 28 U.S.C. § 2254. See Logan v. Mississippi, No. 4:13CV122-GHD-DAS, 2015 WL 576573, at *2 (N.D. Miss. Feb. 11, 2015) (denying Petitioner's requests for relief including "a hearing to determine whether he was actually a fugitive at the time of his arrest, detention, and subsequent extradition," and "for Mississippi and Tennessee to follow the requirements of the Interstate Agreement on Detainers"). That court explained that the provisions of the Interstate Agreement on Detainers did not apply in Petitioner's case because "Mississippi is not a signatory to the IAD," and that "Logan's transfer to Mississippi extinguished any habeas corpus claims regarding the propriety of his extradition." Id. at *2–4. Petitioner did not appeal that decision.

To determine whether a preliminary injunction is appropriate, the Court must consider four factors:

> First, the court must determine whether the plaintiff has established a substantial likelihood or probability of success on the merits of his claim. Second, the court will determine whether the [petitioner] would suffer irreparable injury if a preliminary injunction did not issue. Third, the court determines whether the

injunction would cause substantial harm to others. And finally, a court must consider whether the public interest would be served if the court were to grant the requested injunction.

Liberty Coins, LLC v. Goodman, 748 F.3d 682, 689–90 (6th Cir. 2014) (citations and internal question marks omitted). Here, it is clear that none of these factors support Petitioner's motion for a preliminary injunction. In particular, Petitioner has no likelihood of success on the merits of any claim described in his motion, as demonstrated by the Court's conclusions in this Memorandum Opinion and the prior decision of the district court in Logan v. Mississippi, supra. See Johnson v. Klyle, No. CIV.A.2002-CV-04632, 2004 WL 953148, at *1 n.3 (E.D. Pa. Mar. 29, 2004) (denying motion for preliminary injunction filed in habeas case, in part because another court "previously correctly denied petitioner the same relief sought here"). Nor has he shown any legitimate injury resulting from the presence of the detainer. Rather, it is the interests of the State of Mississippi in securing custody of Petitioner that would be injured if the Court were to grant injunctive relief. Finally, no interest of the public would be served by enjoining the operation of a duly lodged detainer.

Accordingly, Petitioner's motion for a preliminary injunction will be denied.

**V. Conclusion**

For the foregoing reasons, the habeas corpus petition and motion for preliminary injunction will be denied, and this matter will be dismissed with prejudice. Petitioner's Motion to Show Cause of Extradition Documents (Doc. No. 25) and Motion to Consolidate (Doc. No. 30) will be denied as moot.

When the district court denies a ground for relief on the merits in a habeas corpus action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, the

petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any ground for relief asserted in the petition, a COA will not issue.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE